## In re ABSHER CHILDREN.

[Cite as *In re Absher Children* (2001), 141 Ohio App.3d 118.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2000–03–057.

Decided Feb. 5, 2001.

120

*Thomas G. Eagle,* for appellant.

*Mary K. Dudley,* for appellee.

ON RECONSIDERATION

WALSH, Judge.

Respondent-appellant, putative father Lloyd Arneach, Jr., filed a motion for reconsideration of our decision rendered on December 4, 2000, contending that this court erred in one of its holdings. We find that Arneach's motion has merit and his motion for reconsideration is hereby granted.

Arneach is an enrolled member of the Eastern Band of Cherokee Indians (the "Tribe") and resides on the Eastern Cherokee Indian Reservation in Cherokee, North Carolina.[1] The biological mother of the parties' three children (William, born in 1995; Samuel, born in 1997; and Sandra, born in 1998) is petitioner-appellee, Amy Reed, a non-Indian. Arneach and Reed are not married. From March 1997 to February 1998, Reed, William, and Samuel lived with Arneach on the reservation in Cherokee, North Carolina. In February 1998, Reed, then pregnant with Sandra, moved away from Arneach to Butler County, Ohio, taking William and Samuel with her. In April 1998, Sandra was born in Butler County.

On June 11, 1998, Arneach filed a complaint in the Tribal Court of Indian Offenses in Cherokee ("tribal court"), identifying the three children, alleging them to be his, and seeking custody of them. Reed was served with summons in Ohio in the tribal court action on June 29, 1998. On July 10, 1998, Reed filed a complaint for custody of the children in the Butler County Court of Common Pleas, Juvenile Division ("trial court"). Reed's complaint listed Arneach as the children's father and referred to a custody proceeding pertaining to the children having been filed in North Carolina.

Arneach moved the trial court to dismiss Reed's case on jurisdictional grounds. By judgment entry filed October 16, 1998, the trial court denied Arneach's motion, finding that it, rather than the tribal court, had jurisdiction over the custody proceedings. The trial court specifically found that "this [was] not a custody proceeding as defined in 25 USC Section 1903(1) [a.k.a. the Indian Child Welfare Act (the 'Welfare Act')]." In December 1998, the trial court granted legal custody of the children to Reed.

On appeal, Arneach argued, *inter alia,* that the trial court erred by exercising jurisdiction over the custody proceedings. This court rejected Arneach's argument as follows:

"Arneach's complaint in the tribal court was served upon Reed on June 29, 1998, prior to the service of her complaint upon Arneach. This appears to invoke

---

1. A more detailed statement of the facts can be found in our opinion *In re Absher Children* (Dec. 4, 2000), Butler App. No. CA00–03–057, unreported, 2000 WL 1782787 (*"Absher I"*).

the common law rules concerning whether the pendency of a suit in one state abates an action subsequently brought in another state when the later action is between the same parties and involves the same subject matter. * * * However, the enabling legislation [the Welfare Act] under which Arneach commenced his custody action in the tribal court limits the jurisdiction of that court in child custody proceedings to cases involving foster care placement, termination of parent-child relationships, pre-adoptive placements, and adoptive placement. It follows that because this case does not raise issues of foster care placement, termination of parent-child relationships, pre-adoptive or adoptive placement, the tribal court does not have jurisdiction over this matter. We do not, therefore, have a conflicting jurisdiction question. The question that does remain, however, is whether the trial court has jurisdiction."

This court went on to find that the trial court properly exercised jurisdiction over Sandra pursuant to R.C. 3109.21(E) and 3109.22(A), but reversed and remanded the trial court's exercise of jurisdiction over William and Samuel for failing to make the necessary findings as required under R.C. 3109.22(A).

█ The primary test applied to motions for reconsideration is whether the motion calls to the court's attention an obvious error in its decision or raises an issue for consideration that was either not considered at all or not fully considered when it should have been. *Matthews v. Matthews* (1981), 5 Ohio App.3d 140, 143, 5 OBR 320, 323, 450 N.E.2d 278, 282.

In his motion for reconsideration, Arneach asks this court to reconsider the issue of the tribal court's jurisdiction to hear the parties' custody dispute. Specifically, Arneach argues that it was error for this court to find that the enabling legislation under which Arneach filed his custody action in the tribal court was the Welfare Act because Arneach's custody action in the tribal court neither relied on nor mentioned that act. Rather, Arneach argues that his custody action in the tribal court was based upon the general federal statute relating to Indian affairs, Section 2 *et seq.*, Title 25, U.S.Code, its regulations permitting tribes to create courts and judicial systems, Section 11.100 *et seq.*, Title 25, C.F.R., and the Code of the Eastern Band of Cherokee Indians (the "Cherokee Code"). Arneach argues that, as a result, the tribal court acquired proper jurisdiction first and Reed's case in the trial court should be dismissed.

█ "It is a fundamental rule that, as between courts of concurrent and coextensive jurisdiction, the one whose power is first invoked by the institution of proper proceedings and the service of the required process acquires the right to adjudicate upon the whole issue and to settle the rights of the parties to the exclusion of all other tribunals." *State ex rel. Miller v. Lake Cty. Common Pleas Court* (1949), 151 Ohio St. 397, 400–401, 39 O.O. 232, 234, 86 N.E.2d 464, 466.

"Service of process is * * * a condition precedent to vesting of jurisdiction in determining which of two courts has the exclusive right to adjudicate the whole case." *State ex rel. Balson v. Harnishfeger* (1978), 55 Ohio St.2d 38, 39–40, 9 O.O.3d 21, 22, 377 N.E.2d 750, 751.

Before we address Arneach's arguments, we reiterate our previous holding that the trial court has proper jurisdiction over the parties' daughter. As we stated in *Absher I,* at the time Reed filed her complaint in the trial court, Sandra, who was born in Butler County, had resided there with Reed since her birth and was less than six months old. Ohio was thus Sandra's home state for purposes of the custody proceedings. See R.C. 3109.22(A)(1) and 3109.21(E).

We also reiterate for the reasons set forth in *Absher I* that the Welfare Act does not apply to the custody proceedings at bar. However, this court's finding that Arneach filed his custody action in the tribal court based upon the Welfare Act is erroneous. A review of Arneach's custody complaint shows that Arneach did not refer to or mention the Act. The question remains, however, as to whether the tribal court has jurisdiction over the custody proceedings regarding the parties' sons, William and Samuel.

Arneach contends that the general federal statute relating to Indian affairs, Section 2 *et seq.,* Title 25, U.S.Code, its regulations permitting tribes to create courts and judicial systems, Section 11.100 *et seq.,* Title 25, C.F.R., and the Cherokee Code give the tribal court jurisdiction over William and Samuel.

Section 2 of Title 25 of the U.S.Code provides that "[t]he Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, * * * have the management of all Indian affairs and of all matters arising out of Indian relations." Section 11.100 of Title 25 of the Code of Federal Regulations establishes a Court of Indian Offenses for the Eastern Band of Cherokee Indians and provides that "[t]he governing body of each tribe occupying the Indian country over which a Court of Indian Offenses has jurisdiction may enact ordinances which, when approved * * * shall be enforceable in the Court of Indian Offenses having jurisdiction over the Indian country occupied by that tribe * * *." Section 11.103(a), in turn, provides that "each Court of Indian Offenses shall have jurisdiction over any civil action arising within the territorial jurisdiction of the court in which the defendant is an Indian, and of all other suits between Indians and non-Indians which are brought before the court by stipulation of the parties."

Chapter 1, Article 1, Section 1–2. of the Cherokee Code, in turn, provides:

"(b) The Cherokee Court of Indian Offenses * * * shall exercise jurisdiction over the domestic relations of all individuals residing on Cherokee trust lands where either spouse, parent or child is a Tribal member, or where a nonmember

spouse, parent and child are all living on Indian trust land. Jurisdiction shall be exercised for divorce, separation, child custody, support, alimony, adoption and paternity.

"* * *

"(h) The Cherokee Court of Indian Offenses * * * shall retain personal jurisdiction over persons or entities resident on Cherokee trust lands for a period of six months after such persons or entities move from Cherokee trust lands."

Thus, pursuant to the Cherokee Code, the tribal court clearly has jurisdiction over custody proceedings regarding William and Samuel. However, in *Absher I,* this court held that the trial court may also have jurisdiction over the parties' sons. We reversed and remanded only the trial court's exercise of jurisdiction over the parties' sons because of the trial court's failure to make the necessary findings as required under R.C. 3109.22(A). Custody proceedings over the parties' sons thus may involve concurrent jurisdiction between the tribal court and the trial court.

Indian tribes were once considered by the United States Supreme Court as "distinct political entities capable of managing their own affairs and governing themselves, and retaining the right of self-government."See *Worcester v. Georgia* (1832), 31 U.S. (6 Pet.) 515, 8 L.Ed. 483; *Cherokee Nation v. Georgia* (1931), 30 U.S. (5 Pet.) 1, 8 L.Ed. 25. Although the Supreme Court has since "departed from the rigid demarcation of state and tribal authority laid down in 1832 in *Worcester,*" *Three Affiliated Tribes v. Wold Engineering, P.C.* (1984), 467 U.S. 138, 147, 104 S.Ct. 2267, 2273, 81 L.Ed.2d 113, 121, Indian tribes remain "unique aggregations possessing 'attributes of sovereignty over both their members and their territory.'" *New Mexico v. Mescalero Apache Tribe* (1983), 462 U.S. 324, 332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611, 619. The sovereignty retained by tribes includes the power to regulate their internal and social relations, *id.* at 332, 103 S.Ct. at 2385, 76 L.Ed.2d at 619, as well as the "power to make their own substantive law in internal matters * * * and to enforce that law in their own forums." *Santa Clara Pueblo v. Martinez* (1978), 436 U.S. 49, 55–56, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106, 113. It is equally well settled that tribal authority over internal matters is exclusive. See *Iowa Mut. Ins. Co. v. LaPlante* (1987), 480 U.S. 9, 18, 107 S.Ct. 971, 977, 94 L.Ed.2d 10, 21.

"Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." *Montana v. United States* (1981), 450 U.S. 544, 564, 101 S.Ct. 1245, 1257, 67 L.Ed.2d 493, 509. Domestic relations among its members are an important area of "traditional tribal control." *Three Affiliated Tribes,* 476 U.S. at 889, 106 S.Ct. at 2313, 90 L.Ed.2d at 892–893. State courts

may not exercise jurisdiction over disputes between Indians and non-Indians arising out of on-reservation conduct if doing so would "infring[e] on the right of reservation Indians to make their own laws and be ruled by them." *Fisher v. Dist. Court of Sixteenth Jud. Dist.* (1976), 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106, 111, citing *Williams v. Lee* (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. The question then becomes whether the trial court's exercise of jurisdiction over the parties' sons would infringe on the right of the reservation Indians of the Eastern Band of Cherokee Indians "to make their own laws and be ruled by them."

■ "The Cherokee Indians have an interest in making their own laws and enforcing them." *Jackson Cty. ex rel. Smoker v. Smoker* (1995), 341 N.C. 182, 184, 459 S.E.2d 789, 791. As already noted, the Eastern Band of Cherokee Indians has its own tribal code and tribal court. The Tribe has determined to exercise jurisdiction by giving its tribal court authority in domestic relations cases, including child custody matters. Arneach is an enrolled member of the Tribe, as are the parties' two sons. While not married, Arneach, Reed, and their sons lived on the reservation from March 1997 to February 1998, when Reed moved to Butler County with the parties' sons. It is undisputed that Arneach filed his custody action in the tribal court and served Reed *before* Reed filed her custody action in the trial court.

Given the clear policy of the United States Supreme Court favoring tribal self-government, and in light of all of the foregoing, we find that the trial court's exercise of jurisdiction over the custody proceedings regarding the parties' sons infringed on the Tribe's right to make its own laws and be ruled by them, and interfered with the sovereignty of the Tribe. We therefore hold that the trial court does not have jurisdiction over the parties' sons. Rather, once Reed was served with summons in Ohio in the tribal action, the tribal court acquired and retained jurisdiction over the custody proceedings regarding the parties' sons.

Our decision today leads to an unfortunate and absurd result, *i.e.*, the exercise of jurisdiction by two different courts from two different states over siblings: the tribal court over William and Samuel, the trial court over Sandra. This situation was perhaps originally created because the trial court failed to contact the tribal court once it was aware of the jurisdictional dispute. We strongly believe that the trial court should have contacted the tribal court before deciding to exercise jurisdiction over the children pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA") as codified in R.C. 3109.21 through 3109.37.

As the Ohio Supreme Court aptly stated in *In re Adoption of Asente* (2000), 90 Ohio St.3d 91, 734 N.E.2d 1224:

■ "Appropriately, the primary 'purpose of the UCCJA is to avoid jurisdictional competition and conflict with other jurisdictions and to facilitate the speedy and efficacious resolution of custody matters so that the child or children in question will not be caught in a judicial "tug of war" between different jurisdictions.' (Citations omitted.)

■ "When a court of this state is asked to make a custody decision with respect to a child who is the subject of proceedings within the jurisdiction of another state, the UCCJA anticipates that a *meaningful dialogue* will occur between the judges in deciding which court is the more appropriate forum from which to decide the child custody issues. R.C. 3109.24." (Emphasis added.) *Id.* at 102, 734 N.E.2d at 1233.

Based upon the foregoing, we find that Arneach set forth an obvious error in this court's decision upholding the trial court's finding that the tribal court did not have jurisdiction over any of the children. While the trial court has jurisdiction over Sandra, it does not have jurisdiction over William and Samuel. Rather, the tribal court acquired jurisdiction over the parties' sons as soon as Arneach served Reed with summons in Ohio in the tribal action. Arneach's motion for reconsideration is therefore granted.

We reverse the trial court's exercise of jurisdiction over the parties' sons and the portion of the trial court's decision granting legal custody of William and Samuel to Reed. Although it properly exercised jurisdiction over Sandra, we nevertheless remand the portion of the trial court's decision granting legal custody of Sandra to Reed for the purpose of determining whether the trial court should retain jurisdiction over Sandra. In making such determination, we strongly suggest that the trial court contact the tribal court and engage in a meaningful dialogue as to which court should decide the issue of Sandra's custody.

*Judgment accordingly.*

POWELL, P.J., and WILLIAM W. YOUNG, J., concur.